IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| AURELIO MONTANO, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 07 C 1245 |
| v. | ) ) | Judge Virginia M. Kendall |
| TERRY MCCANN, | ) ) | |
| Defendants. | ) ) ) | |

**MEMORANDUM OPINION AND ORDER**

Petitioner Aurelio Montano ("Montano"), a citizen of Mexico, was convicted by a jury in the Circuit Court of Kane County, Illinois of two counts each of first degree murder and concealment of a homicidal death in 1998. The circuit judge sentenced him to life in prison without parole for the two murders and to two concurrent terms of four years each for concealment of the homicidal deaths. Montano is currently housed in the Stateville Correctional Center in Joliet, Illinois. He now brings a petition for writ of habeas corpus alleging violations of his rights under *Doyle v. Ohio*, 426 U.S. 610 (1976) and the Vienna Convention and requesting an evidentiary hearing and thereafter either release from custody or a new trial. For the reasons stated below, Montano's petition is denied.

**STATEMENT OF FACTS**

Montano and his nephew, Juan Barbosa ("Barbosa"), were charged with the murders of Claudia Ramos and Juan Medina, who were found slain in a drainage ditch on June 28, 1996.[1]

---

[1] Montano does not challenge the facts set forth in the Illinois Appellate Court's opinions affirming the judgments of the Circuit Court Kane County. The Court therefore adopts the underlying facts as set forth in *People v. Montano*, Nos. 2-99-0071 & 2-99-0524 (Ill.App.Ct.

Barbosa entered into a plea agreement with the State's Attorney's Office providing that Barbosa would be allowed to enter a guilty plea to one count of murder and receive a sentence of sixty years imprisonment in exchange for his truthful testimony. Montano proceeded to trial on all charges.

Investigator Mark Greene ("Greene") of the LaSalle County sheriff's department, who interviewed Montano after his arrest and after he had been given *Miranda* warnings, testified at the trial. Prior to the trial the circuit court granted the prosecutor's motion *in limine* asking that testimony pertaining to Montano's physical conduct during his interview with Greene, specifically that he turned away and put his head down when faced with accusations, be admitted into evidence. At trial, Greene testified that during the post-arrest interview he told Montano that he did not believe an explanation he gave as to how he came into possession of the victim's wallet, watch and rings. Montano responded that he "was not taking responsibility for anybody else." The prosecutor then asked Greene: "Did he react in any other way at that point in time?" Greene replied: "He dropped his head and didn't stay [sic] anything after that until he asked for his attorney."

Montano's defense attorney requested a sidebar immediately after this statement. He argued at sidebar that Greene's statement amounted to a *Doyle* violation - that is, Montano's post arrest silence and request for an attorney was used against him - but he did not believe that the statement was elicited by the question posed by the prosecutor. *See*, *e.g.*, *Doyle v. Ohio*, 426 U.S. 610, 618-19 (1976) (arrested person's post arrest silence cannot be used to impeach his testimony at trial). The prosecutor suggested a curative instruction which the defense attorney refused. At the prosecutor's suggestion, the trial continued without prejudice to the defense's right to move for a mistrial.

---

September 5, 2000) and *People v. Montano*, 848 N.E.2d 616 (Ill.App.Ct. 2006). *See* 28 U.S.C. § 2254(e)(1); *Virsnieks v. Smith*, 521 F.3d 707, 713 (7th Cir. 2008).

When the trial resumed the prosecutor stated that he had no further questions for Greene. At the end of the trial day the defense moved for a mistrial. The circuit court heard and denied the motion the next morning, finding that although the comment was "arguably" a *Doyle* violation, the prosecutor did not intend to elicit it. The Court directed the prosecutor not to make any reference to the remark and offered to instruct the jury to disregard it. The defense declined the instruction and the prosecutor never referred to or made use of the remark during the remainder of the trial. The jury later found Montano guilty of all charges and the Judge sentenced him to life in prison without parole for the murders and to two concurrent terms of four years for the concealment of the homicidal deaths.

Montano appealed his convictions to the Appellate Court of Illinois arguing that Greene's testimony violated his due process rights because the prosecutor elicited testimony revealing that he refused to talk and had asked for an attorney. *See People v. Montano*, Nos. 2-99-0071 & 2-00-0524 cons. (Ill.App.Ct. 2000). The Appellate Court found that Greene's comment "constituted a *Doyle* violation" because it "could have created the inference that defendant was trying to shield himself from responsibility for the murders" but that the error was harmless in light of the extensive evidence of Montano's guilt presented during the course of the trial. The Court affirmed the convictions. Montano then filed a Petition for Leave to Appeal to the Illinois Supreme Court raising the same issue which was denied on November 29, 2000. *See People v. Montano*, 742 N.E.2d 332 (Ill. 2000).

On May 3, 2001, Montano filed a post-conviction petition in the Circuit Court of Kane County as provided for under the Illinois Post-Conviction Hearing Act, 725 ILCS 5/122-1 *et seq*, arguing that his right to due process had been violated because the state failed to advise him of his

right to communicate with the Mexican consulate as guaranteed by Article 36 of the Vienna Convention. The circuit court held an evidentiary hearing and then denied Montano's petition. Montano appealed and the appellate court found that he waived the issue because he failed to raise it during pretrial proceedings, trial, post-trial motions and direct appeal and because the plain error doctrine did not apply to Vienna Convention violations. *See People v. Montano*, 848 N.E.2d 616, 619-20 (Ill.App.Ct. 2006). The appellate court also held that a new trial was not warranted in part because Montano was not prejudiced by any violation of the Vienna Convention. *Id*. at 622. Montano then filed a Petition for Leave to Appeal to the Illinois Supreme Court which petition was denied on September 27, 2006. *See People v. Montano*, 857 N.E.2d 680 (Ill. 2006). Montano thereafter filed this petition for writ of habeas corpus on March 5, 2007, arguing both that a harmful *Doyle* error occurred during his trial and that his rights under the Vienna Convention were violated. He requests a new trial. The State agrees that Montano has exhausted all of his state-court remedies and that his petition is timely.

## STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), habeas relief is only granted if the state court's decisions were contrary to or an unreasonable application of federal law as clearly established by the Supreme Court. *See Williams v. Taylor*, 529 U.S. 362, 402-03 (2000). A state court's decision is "contrary to" clearly established Supreme Court law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives" at a contrary result. *Id*. at 405. A state court's decision is an "unreasonable application" of Supreme court law if the state court identified the correctly identified

4

controlling law but unreasonably applied it to the facts of the case at hand. *Id*. "This reasonableness determination is quite deferential, such that a state decision may stand as long as it is objectively reasonable, even if the reviewing court determines it to be substantively incorrect." *Barrow v. Uchtman*, 398 F.3d 597, 602 (7th Cir. 2005); *see also Williams*, 529 U.S. at 410 (an *unreasonable* application of federal law is different from an *incorrect* application of federal law) (emphasis in original). A state court's decision must lie "well outside the boundaries of permissible differences of opinion" to be found objectively unreasonable. *Gilbert v. Merchant*, 488 F.3d 780, 790 (7th Cir. 2007) *quoting Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002).

## DISCUSSION

### *Doyle* Violation

The use of a defendant's silence at arrest and after the receipt of *Miranda* warnings to impeach his trial testimony is a violation of the Due Process Clause of the Fourteenth Amendment because the *Miranda* warnings contain an implicit assurance that silence will carry no penalty. *See Doyle*, 426 U.S. at 619. Silence "does not mean only muteness; it includes the statement of a desire to remain silent, as well as of a desire to remain silent until an attorney has been consulted." *Wainwright v. Greenfield*, 474 U.S. 284, 295 (1986) The *Doyle* rule extends to circumstances beyond impeachment because "*Doyle* rests on the fundamental unfairness of implicitly assuring a suspect that his silence will not be used against him and then using his silence to impeach an explanation subsequently offered at trial." *Id*.

"Doyle does not impose a prima facie bar against any mention whatsoever of a defendant's right to request counsel, but instead guards against the exploitation of that constitutional right by the prosecutor." *Lindgren v. Lane*, 925 F.2d 198, 202 (7th Cir. 1991). In order to determine if a *Doyle*

5

violation occurred, the Court must look to the circumstances under which the defendant's post-arrest silence is brought forth at trial. *See Id.* That is, a jury's knowledge of a suspect's silence is not problematic "when the knowledge is not used to subvert the defense" or put another way, when the prosecutor does not argue that the jury should infer guilt from the silence. *Splunge v. Parke*, 160 F.3d 369, 372 (7th Cir. 1998); *see also Greer v. Miller*, 483 U.S. 756, 764 (1987) ("it is significant that in each of the cases in which this Court has applied *Doyle*, the trial court has permitted specific inquiry or argument respecting the defendant's post-*Miranda* silence").

Here the prosecutor did not make a specific inquiry into Montano's silence and request for counsel. Rather he asked Greene a general question: "Did he react any other way at that point in time?" It appears that the prosecutor expected to elicit a description of Montano's physical conduct but Greene instead responded by briefly mentioning Montano's post-arrest silence. *See Anderson v. Charles*, 447 U.S. 404, 409 (1980) (noting that the prosecutor's questions "were not designed to draw meaning from silence"). The circuit court granted defense counsel's request for a sidebar directly following the statement at issue and offered a curative instruction. The prosecutor asked no further questions of Greene and most importantly made no further mention of and no comment on Montano's refusal to answer Greene's question or his request for an attorney. These circumstances do not amount to a *Doyle* error. A jury's mere knowledge of a suspect's silence is not the same as a constitutionally forbidden comment on the silence or use of the silence against the defendant. *See Splunge*, 160 F.3d at 372. Here, no *Doyle* error occurred because although Greene mentioned Montano's silence, the prosecutor never commented on it, made any argument regarding it or in any way used it to undermine Montano's defense. *See*, *e.g.*, *Greer*, 483 U.S. at 764-65 (no *Doyle* error where prosecutor questioned defendant as to why he did not protest his innocence in his

6

police interview, defense attorney objected, the objection was sustained, and prosecutor made no further mention of defendant's silence); *Lindgren*, 925 F.2d at 201-203 (no *Doyle* error where prosecution witness mentioned that defendant requested a lawyer but the statement was not mentioned again or used by prosecution). Montano's petition for habeas corpus therefore must fail on this ground because federal law does not support his contention that a *Doyle* error occurred, much less that such an error was harmful.

**Violation of the Vienna Convention**

Montano next argues that he should receive a new trial because he was not advised of his right to contact and consult with consular officials of Mexico in violation of Article 36 of the Vienna Convention. *See* Vienna Convention, art. 36(1)(b), 21 U.S.T. 77 (April 24, 1963, ratified 1969) (officials shall inform a foreign detainee of his right to contact his consulate). The State concedes that Montano is a citizen of Mexico and that he was not informed of his right to contact the Mexican consulate but argues that Montano procedurally defaulted this claim because he did not raise it either in the trial court or on direct appeal.

Under the procedural default doctrine, a federal court will not reach the merits of a habeas claim where: 1) the claim was presented to the state courts and their ruling against the petitioner rested on an adequate and independent state procedural ground; or 2) the claim was not presented to the state courts and it is clear that those courts would not hold the claim procedurally barred. *See Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004). Such a procedural default does not preclude a federal court from considering a habeas claim if the petitioner demonstrates either cause for the default and prejudice resulting from it or that a miscarriage of justice will result if the claim is not considered on the merits. *Id*. Procedural default only precludes habeas review where the last state

7

court rendering judgment on the claim "clearly and expressly" stated that it rested its judgment on procedural default. *Harris v. Reed*, 489 U.S. 255, 262-63 (1989). These procedural default rules apply to claims of violations of the consular notification provisions of the Vienna Convention. *See Sanchez-Llamas v. Oregon*, 548 U.S. 331, 350-52 (consular notification claim failed because not raised on direct appeal); *Breard v. Greene*, 523 U.S. 371, 375-76 (1998) (consular notification claim failed because not raised in state court).

Here, the last state court to render judgment on Montano's claim of violation of the consular notification provisions of the Vienna Convention clearly and expressly found that Montano had waived the claim because he "never raised the issue regarding the failure to notify him of his right to foreign consular notification during pretrial proceedings, during the trial, in any posttrial motion or on direct appeal." *People v. Montano*, 848 N.E.2d 616, 619 (Ill.App.Ct. 2006) ("the failure to raise the issue results in waiver"). Indeed, under Illinois law issues that could have been but were not raised on direct appeal are considered waived and therefore cannot be raised in postconviction proceedings. *See People v. Blair*, 831 N.E.2d 604, 614 (2005) *citing People v. Pitsonbarger*, 793 N.E.2d 609, 619 (Ill. 2002). As such, Montano did not properly present his Vienna Convention claim to the state courts and the Illinois Appellate Court ruled against Montano on and independent state procedural ground. Montano makes no argument that there was a cause for the default or that a miscarriage of justice will result from it. Therefore, this Court will not consider the merits of Montano's claim that his rights under the Vienna Convention were violated.

For the reasons stated above, Montano's Petition for Habeas Corpus is denied as to his claim of a *Doyle* violation and dismissed as to his claim of violation of the Vienna Convention.

So ordered.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date: April 17, 2009